UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ANDREA N. SMITH, Personal Representative of the ESTATE OF ANGELA H. PURNELL; *et al.*, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No.: 6:23-cv-00757-AMM |
| HANNIGAN FAIRING CO., LTD.; *et al.*, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs Andrea Smith and Tiffany Gailes, personal representatives of the estates of Angela H. Purnell and Paul Raven Purnell, respectively, bring this wrongful death action against defendants Dodd Sales, LLC and American Honda Motor Co., Inc. The plaintiffs' claims are based on the Alabama Extended Manufacturer's Liability Doctrine and theories of negligence, wantonness, strict liability, and breach of warranty. Doc. 38. Before the court is defendant Dodd's motion for summary judgment. Doc. 55. For the reasons stated below, Dodd's motion is **GRANTED.**

I. **BACKGROUND**

On either May 3 or May 6, 2021, decedents Paul and Angela Purnell purchased a modified 2008 Honda GL18 Goldwing Motorcycle from Dodd, an Alabama LLC operating a new and used motorcycle and trike dealership in Haleyville, Alabama. Doc. 38 ¶¶ 6, 10; Doc. 56 ¶¶ 1–2; Doc. 59 ¶ 2. The originally two-wheeled motorcycle was converted to a three-wheeled trike using a trike kit "designed, manufactured, assembled, and/or installed" by Hannigan Motor Sports. Doc. 38 ¶ 10; Doc. 49 ¶ 10. Dodd purchased the trike from William Buzbee in 2021. Doc. 56 ¶ 10. The trike had already been converted from its original two-wheeled form before Buzbee purchased it in 2018. *Id*. ¶ 11. Buzbee states that he never experienced any mechanical problems or brake issues in his approximately eighteen-month ownership of the trike. *Id*. ¶ 12; Doc. 57-6 ¶¶ 5–7.

In or around 2015, Honda issued a recall of several different motorcycles and trikes manufactured from 2001 to 2015 and updated an existing recall of certain motorcycles manufactured between 2001 and 2012, including the motorcycle-turned-trike purchased by the Purnells. Doc. 60-1. The recall was issued due to a potential defect in the referenced motorcycles' secondary master cylinders. *See id.* Specifically, the recall stated that "under conditions where the brake fluid is subject to prolonged aging due to a lack of maintenance . . . deposits may form within the brake fluid," which could "result in a malfunction of the secondary master cylinder,

which may cause the rear brake to drag." *Id.* The recall notice instructed dealers to repair any affected units before selling them and noted that Honda would instruct owners of affected motorcycles to bring them to a Honda facility for repair. *Id*.

Dodd alleges that Paul Purnell signed several documents when the Purnells purchased the trike, including a Bill of Sale. Doc. 56 ¶ 3; Doc. 57-5 at 2. This Bill of Sale contained a clause stating

> The undersigned Purchasor acknowledges that the above described [sic] property has been examined, inspected and approved by undersigned or his agent, and that said property is as represented, accepts same as is and in full knowledge of its condition at the time of sale; agrees that the seller shall not be responsible or liable for any inducement, promise, representation, agreement, condition or stipulation not specifically set forth herein in writing . . . .
>
> **SOLD AS IS – NO WARRANTY**.

Doc. 56 ¶ 21; Doc. 57-5 at 2. Mr. Purnell also allegedly signed a statement acknowledging that Dodd had notified him of a Honda recall affecting the trike, "a limited power of attorney, an acknowledgment and release, a bike/trike checklist, . . . [and] a declination of a training and practice program." Doc. 56 ¶ 3; Doc. 57-1 to 57-4.

On September 25, 2021, Paul Purnell was driving the trike on a highway in Knoxville, Tennessee with his wife Angela riding as a passenger. Doc. 38 ¶ 17; Doc. 47 ¶ 17. The plaintiffs allege that as the Purnells approached a curve in the road, they

3

experienced an issue with the trike's brakes and were unable to slow down or stop the vehicle. Doc. 38 ¶ 18. The Purnells "were unable to make the turn and ran off the road down a steep embankment." *Id*. Mr. Purnell was thrown from the trike, while Mrs. Purnell remained in the passenger seat as the trike collided with a tree. *Id*. ¶ 19. Both Mr. and Mrs. Purnell were pronounced dead at the scene of the accident. *Id*.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015)).

In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). If the movant carries its burden in either of the two ways, the burden shifts to the non-movant "to show the existence of a genuine issue [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSOUTH, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).

When a nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322–23.

### III.  DISCUSSION

The complaint does not clearly identify each individual claim it raises against Dodd, but the claims the court is able to identify are based on theories of negligence, wantonness, strict liability, breach of warranty, and the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). Doc. 38. Dodd moves for summary

5

judgment in its favor on all of the plaintiffs' claims. Docs. 55, 56. Specifically, Dodd contends that the plaintiffs cannot maintain a product liability action against it because Dodd was a mere conduit of the trike. *See* Doc. 56 at 12. In the alternative, Dodd argues that (1) it cannot be held liable under the AEMLD because it gave the Purnells proper notice of the cylinder recall, *id.* at 9, and (2) it cannot be held liable for breach of warranty because the Purnells purchased the trike from Dodd "as-is," *id.* at 25.

## A. The Plaintiffs' Tort Claims are Governed by Tennessee Law

This court applies the choice of law rules of the forum state, Alabama, to determine what law controls the plaintiffs' substantive claims. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) ("A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state."). The court must first "characterize the legal issue and determine whether it sounds in torts, contracts, property law, etc.," then "determine[] the choice of law rule that the forum state applies to that particular type of issue." *Id.*[1]

The plaintiffs' complaint alleges that Dodd breached its duty "to the Purnells and the public at large, to place on the market a reasonably safe product . . . in that

---

[1] "[F]ederal courts sitting in Alabama have consistently concluded that when the duty allegedly breached is the duty created by the contract itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort." *Citizens Bank & Tr. v. LPS Nat'l Flood, LLC*, 51 F. Supp. 3d 1157, 1170 (N.D. Ala. 2014) (collecting cases).

6

the trike was negligently designed, manufactured, tested, assembled, marketed, installed and sold." Doc. 38 ¶ 23. The plaintiffs also allege that the defendants "sold and marketed [the] trike in a condition which was defective and unreasonably dangerous by virtue of its design, manufacture, inadequate warning, and the failure to provide adequate instructions relative to its use." *Id*. ¶ 25. The plaintiffs claim Dodd is thus liable for their injuries under the theory of strict liability and under the AEMLD. *Id.*

The plaintiffs' negligence, wantonnes, strict liability, and AEMLD claims all sound in tort. In *Casrell v. Altec Industries, Inc.*—one of the two cases establishing the AEMLD—the Alabama Supreme Court noted that in "extend[ing] the doctrine of 'manufacturer's liability[]' . . . [to] include not only the manufacturer, but also the supplier and the seller," it "adhere[d] to the tort concept of fault." 335 So. 2d 128, 132 (Ala. 1976). Specifically, the court "opine[d] that a manufacturer, or supplier, or seller, who markets a product not reasonably safe when applied to its intended use in the usual and customary manner, constitutes negligence as a Matter of law." *Id*. Additionally, in their complaint, the plaintiffs frame their AEMLD claim as an action sounding in tort. *See* Doc. 38 ¶ 25 ("The Plaintiffs rely upon the doctrine of strict liability in tort as stated in the Restatement of Torts, 2d, Section 402A and Alabama Extended Manufacturer's Liability Doctrine.").

The plaintiffs' claim that the defendants breached the implied warranty of merchantability, however, sounds in contract. *See id*. ¶ 26. As previously noted, the complaint is less than clear as to what the specific claims against Dodd are. In Paragraph 26 of their Amended Complaint, the plaintiffs state that "Defendants breached certain warranties recognized under the law, and the Plaintiffs rely particularly upon §[] 7-2-316 of the Alabama Code Annotated pertaining to implied warranty of merchantability . . . ." *Id.* The plaintiffs do not further clarify what "certain warranties" they claim Dodd breached, other than the implied warranty of merchantability. Dodd appears to construe the Amended Complaint's later mention of "express and implied misrepresentations of material facts," *id*. ¶ 31, as a claim for breach of express warranties. *See* Doc. 56 at 27. However, because the plaintiffs did not specifically state a claim for breach of express warranties, this court reads the complaint as raising a claim for breach of the implied warranty of merchantability only.

Without citing any legal authority, the plaintiffs incorrectly contend that "Tennessee law does not apply in this case," because "[t]he traditional rules 'place of injury' or 'place property is located' are old and rigid and no longer relied on." Doc. 59 at 18. The plaintiffs state that "[c]ourts now look at sufficient contacts," noting that when this case was originally filed in a federal court in Tennessee, "Defendant challenged jurisdiction based on insufficient

8

contacts with Tennessee and the Court agreed." *Id.* (citing Doc. 38 ¶ 2; Doc. 47 ¶ 2). However, the issue of whether a court has personal jurisdiction over a party and the question of which state's substantive law applies to a dispute are not the same thing.

"Alabama law follows the traditional conflict-of-law principles of *lex loci contractus* and *lex loci delicti*." *Precision Gear Co. v. Cont'l Motors, Inc.*, 135 So. 3d 953, 956 (Ala. 2013) (quoting *Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009)). Under the principle of *lex loci contractus*, courts apply the law of the state where the contract at issue was formed. *See id.* Similarly, the principle of *lex loci delicti* requires courts to apply "the law of the state where the injury occurred" for tort claims. *Id.*

Thus, the plaintiffs' negligence, wantonness, strict liability, and AEMLD claims are governed by the law of the state where the Purnells' accident occurred: Tennessee. *See* Doc. 38 ¶¶ 17–19. The plaintiffs' breach-of-warranty claim, however, is governed by the law where the contract for the sale of the trike was formed: Alabama. *See* Doc. 56 ¶¶ 1–2.

### B. The Motion for Summary Judgment Before the Close of Discovery Is not *Per Se* Improper

As an initial matter, the plaintiffs briefly argue that Dodd's motion for summary judgment should be denied because it was filed before the close of discovery. The plaintiffs state that "discovery is crucial to ascertain material facts regarding the sale of the trike to the Purnells," which "cannot be determined without

9

deposing persons involved in the transaction establishing a foundation for alleged documents." Doc. 59 at 5. The plaintiffs then quote a decision from the Alabama Court of Civil Appeals, stating "[i]f . . . it can be ascertained that discovery is crucial to the nonmoving party's case, then it is error for the trial court to enter a summary judgment before the discovery has been completed." *Id.* at 5–6 (quoting *Kirk v. Griffin,* 667 So. 2d 1378, 1380 (Ala. Civ. App. 1995)). While the Eleventh Circuit has similarly stated that "[a]s a general rule summary judgment should not be granted until the party opposing the motion has had an adequate opportunity to conduct discovery," it has expressly declined to "adopt [a] blanket prohibition on the granting of summary judgment motions before discovery." *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 843 (11th Cir. 1989).

Federal Rule of Civil Procedure 56(d) contemplates summary judgment motion practice before the close of discovery:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

"The party seeking to use rule [56(d)]² may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts but rather he must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Reflectone*, 862 F.2d at 843–44 (11th Cir. 1989) (cleaned up).

The plaintiffs have not specifically stated what "material facts regarding the sale of the trike to the Purnells" they need to be able to oppose Dodd's motion for summary judgment. Doc. 59 at 5. Nor have the plaintiffs demonstrated how postponement of a ruling would enable them to obtain that information. The plaintiffs have merely stated that unspecified material facts cannot be obtained until they have deposed unspecified persons.

In any event, although the instant motion was briefed before discovery was complete, the deadline for completion of discovery has since passed. *See* Doc. 67 (granting plaintiffs' motion to extend the discovery deadline to November 4, 2024). The plaintiffs have not sought leave to file any supplemental exhibits to support their response in opposition to Dodd's motion since the discovery deadline passed, nor at any point since the response was initially filed.

---

² Until 2010, the provisions of Rule 56(d) were found in Rule 56(f). *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (stating that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)").

11

## C. Dodd's Exhibits Are Admissible Business Records

Before reaching the parties substantive arguments, the court must also address the plaintiffs' challenge to the admissibility of exhibits Dodd has submitted in support of its motion for summary judgment. The plaintiffs argue that the bill of sale, acknowledgement of the recall notice, trike checklist, recall notice, and declination to participate in the training course are all inadmissible to support Dodd's motion for summary judgment because they "cannot be presented in a form that would be admissible in evidence and thus, pursuant to Fed. R. Civ. P. 56(c)(2), may not be considered by the Court." Doc. 59 at 6. Specifically, the plaintiffs assert that "no foundation has been established for any of the cited documents and the documents have not been authenticated," and "there are other deficiencies, visible changes and blank spaces that negate authenticity . . . ." *Id.*

At summary judgment, "evidence does not have to be authenticated or otherwise presented in an admissible form to be considered . . . , as long as the evidence could ultimately be presented in an admissible form." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021) (cleaned up). Thus, "[w]hen a Rule 56(c)(2) objection is made, it is within the district court's discretion to determine if the material used to support a fact can be presented in a form that would be admissible at trial." *Jacoby v. Keers*, 779 F. App'x 676, 679 (11th Cir. 2019).

12

In its reply brief in support of its motion for summary judgment, Dodd states that the sales documents the plaintiffs object to are all "made and kept in the normal, customary and ordinary course of [Dodd's] business." Doc. 62 at 8. "Under Rule 902(11), an item of evidence is 'self-authenticating' if it is an 'original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C).'" *United States v. Clotaire*, 963 F.3d 1288, 1293 (11th Cir. 2020) (quoting Fed. Evid. 902(11)). "Rule 803 . . . provides that a business record is admissible if three conditions are met: (A) 'the record was made at or near the time by . . . someone with knowledge,' (B) 'the record was kept in the course of a regularly conducted activity of a business,' and (C) 'making the record was a regular practice of that activity.'" *Id*. (quoting Fed. R. Evid. 803(6)). Seeing no reason why the sales documents could not be proffered at trial in conformity with Rules 803(6) and 902(11), the court will consider them at this stage.

**D. The Plaintiffs' Tort Claims**

Because the plaintiffs' tort claims are governed by the laws of Tennessee, not of Alabama, the Alabama Extended Manufacturer's Liability Doctrine referred to throughout the parties' briefs has no application to this action. The plaintiffs' tort claims are instead governed by Section 29-28-106 of the Tennessee Code, which provides:

> No product liability action, as defined in § 29-28-102, shall be commenced or maintained against any seller, other than the manufacturer, unless:
>
> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;
> (2) Altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;
> (3) The seller gave an express warranty as defined by title 47, chapter 2;
> (4) The manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or
> (5) The manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106. Section 29-28-102 of the Tennessee Code provides that the term "'[s]eller' includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." *Id.* § 29-28-102(7). As a retailer of new and used motorcycles and trikes, Dodd is a "seller" as defined by Section 29-28-102. The same section also provides:

> 'Product liability action' . . . includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. 'Product liability action' includes, but is not limited to, all actions based upon the following theories: strict liability in tort;

14

> negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever[.]

*Id.* § 29-28-102(6).

The plaintiffs' complaint does not clearly delineate the individual claims they intend to raise, but the plaintiffs allege in substance that Dodd's testing, marketing, and sale of the trike and its warning regarding the trike's possible defect was negligent and/or wanton. *See* Doc. 38 ¶¶ 23–25, 27–28, 31–33. The plaintiffs' tort claims thus fall under the statutory definition of a "product liability action." *See* Tenn. Code Ann. § 29-28-102(6). Accordingly, Section 29-28-106 precludes the plaintiffs from maintaining their tort claims against Dodd unless Dodd falls into one of the exceptions described in subsections (1) through (5). The plaintiffs admit that Dodd was not the manufacturer or assembler of the trike, did not alter or modify the trike, and did not exercise control over the design, testing, manufacturing, packaging, or labeling of the trike. Doc. 59 ¶¶ 9–19. Thus, it is undisputed that subsections (1) through (3) do not apply here. And the plaintiffs have failed to demonstrate that subsections (4) or (5) apply to Dodd. The plaintiffs expressly concede that "[i]f the Court were to consider Tennessee law, Defendant would not appear to be liable under the product liability statute . . . ." Doc. 59 at 18. The plaintiffs have thus failed to show that Tennessee law permits them to maintain tort

15

claims against Dodd. Accordingly, Dodd's Motion for Summary Judgment against the plaintiffs' tort claims is **GRANTED**.

### E. The Plaintiffs' Breach-of-Warranty Claim

Dodd argues that the plaintiffs' breach of warranty claim is barred because "a breach-of-warranty claim cannot be maintained under Alabama's wrongful-death statute." Doc. 56 at 26 (quoting *Ala. Powersport Auction, LLC v. Wiese*, 143 So. 3d 713, 719–20 (Ala. 2013)). The plaintiffs argue that they raise their breach-of-warranty claim not under the wrongful death statute, but "as a separate contract claim" for which they "seek[] compensatory damages." Doc. 59 at 22 (citing Doc. 38 ¶¶ 4, 26, 32).

The plaintiffs note that in *Benefield v. Aquaslide 'N' Dive Corp.,* the Alabama Supreme Court found a "breach of warranty (contract) claim" that sought "compensatory damages only, not for the wrongful death of the decedent but for the injuries suffered before his death" to be "a separate and distinct claim from the wrongful death (tort) claim." 406 So. 2d 873, 876 (Ala. 1981). However, in *Benefield*, the decedent survived for nine days before dying from his injuries, *id.* at 874, unlike the present case, in which the decedents were pronounced dead at the scene of the accident.

Regardless, the court need not determine whether the plaintiffs bring their breach of warranty claim as part of a wrongful death action or as a separate claim,

16

because even if the claim were not precluded by the holding in *Wiese*, it nonetheless fails as a matter of law for the reasons explained below.

Dodd asserts that because it merely sold the trike to the Purnells, Alabama's product liability statute shields Dodd from liability for breach of the implied warranty of merchantability. Like the Tennessee Code, the Alabama Code limits the circumstances in which a product liability action may be maintained against the seller of a product. *See* Ala. Code § 6-5-521(b). The Alabama statute provides, in relevant part:

> (b) No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless any of the following apply:
>
> (1) The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition.
> (2) The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition.
> (3) The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.
> (4) It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture,

> such as independent acts of negligence, wantonness, warranty violations, or fraud.

*Id.* The plaintiffs admit that Dodd was not the manufacturer or assembler of the trike, did not alter or modify the trike, and did not exercise control over the design, testing, manufacturing, packaging, or labeling of the trike. Doc. 59 ¶¶ 9–19. Thus, it is undisputed that subsections (b)(1) through (b)(3) do not apply here. The plaintiffs instead rely on subsection (b)(4), arguing that Dodd's sale of the trike to the Purnells despite Honda's recall notice constitutes an "independent act" of "warranty violations." Doc. 59 at 13.

Federal courts sitting in Alabama have noted that because Alabama courts have not yet interpreted Section 6-5-521(b), it remains unclear what actions fall under the subsection (b)(4) exception. *See Lazenby v. ExMark Mfg. Co.*, No. 3:12-cv-82-WKW, 2012 WL 3231331, at *3 (M.D. Ala. Aug. 6, 2012) (discussing Ala. Code § 6–5–501(2)(b)(4)); *Robinson v. Invacare Corp.*, No. 13-0290-WS-C, 2013 WL 5567084, at *2 (S.D. Ala. Oct. 9, 2013) (quoting Ala. Code § 6–5–521(b)(4)). In *Robinson*, an Alabama plaintiff was injured when his walker collapsed. 2013 WL 5567084, at *1. The plaintiff brought product liability claims against both the out-of-state manufacturer of the walker and the Alabama pharmacy that sold it to him. *Id.* The manufacturer sought to remove the case to federal court on the basis of complete diversity of citizenship, alleging that the Alabama seller was fraudulently joined because the plaintiff could not possibly prove a cause of action against it. *Id.*

The court held that Alabama law was yet unclear as to what actions fall into subsection (b)(4)'s exception for "independent acts unrelated to the product design or manufacture." *Id.*, at *2 (quoting Ala.Code § 6–5–521(b)(4)). Because the relevant question of law was unsettled, the court declined to find that the plaintiff could not possibly prove a cause of action against the seller. *Id*. However, this court need not attempt to interpret Section 6–5–521(b)(4), because even if neither the *Wiese* holding nor subsection (b)(4) precluded the plaintiffs from raising a claim for breach of the implied warranty of merchantability, that claim would fail as a matter of law for the reason explained next.

In order "to sustain a claim of breach of an implied warranty" a plaintiff must first demonstrate "the existence of the implied warranty." *Bagley v. Creekside Motors, Inc.*, 913 So. 2d 441, 446 (Ala. 2005) (quoting *Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 315 (Ala. 2003)). "[A]s a general rule of law in Alabama, there are no implied warranties on the sale of a used automobile." *Id*. at 444; *see also Osborn v. Custom Truck Sales & Serv.*, 562 So. 2d 243, 247 (Ala.1990) (quoting *Trax, Inc. v. Tidmore*, 331 So. 2d 275, 277 (Ala. 1976)). The plaintiffs have cited no authority (or reason) to suggest that the general rule is inapplicable here. The plaintiffs argue that the "as is" language in the bill of sale does not shield Dodd from liability for breach of warranty, because Alabama law provides that such language will not "limit or exclude the seller's liability for damages for injury to the person in

19

the case of consumer goods." Doc. 59 at 25 (quoting Ala. Code § 7-2-316(5)). But "in the absence of any showing that implied warranties existed" in Dodd's sale of the trike to the Purnells, the plaintiffs' "argument that such warranties were not excluded by the 'as is' language in the sales contract has no merit." *Creekside Motors*, 913 So. 2d at 446. Accordingly, Dodd's motion for summary judgment as to the plaintiffs' claim for breach of the implied warranty of merchantability is **GRANTED.**

IV.   **CONCLUSION**

For the reasons stated above, Dodd's Motion for Summary Judgment, Doc. 55, is **GRANTED**. The court will enter an order consistent with this opinion.

**DONE** and **ORDERED** this 26th day of February, 2025.



_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE